**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ERIC CHAGOLLA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 07 C 4557** |
| | ) | |
| **CITY OF CHICAGO, JEROME FINNIGAN,** | ) | |
| **KEITH HERRERA, MARGARET HOPKINS,** | ) | |
| **DONOVAN MARKIEWICZ, WILLIAM** | ) | |
| **MORALES, TIMOTHY PARKER, and PAUL** | ) | |
| **ZOGG,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Eric Chagolla has sued the City of Chicago and seven Chicago police officers, claiming that the officers arrested him without probable cause and made false statements that caused him to be charged with a crime and detained. Chagolla has asserted five claims under 42 U.S.C. § 1983 and three state-law claims against the officers. He has also asserted three claims against the city, one of which the Court previously stayed. All of the defendants now seek summary judgment in whole or in part.[1] For the reasons stated below, the Court grants the motions in part and denies them in part.

---

[1]The City of Chicago and Markiewicz have each moved for summary judgment on their own behalf. Parker, Morales and Zogg have filed a separate motion, which Herrera and Hopkins have joined. Each motion states that it incorporates the arguments of the others. Because the arguments in the motions generally apply equally to all defendants, the Court will consider Finnigan (who does not have a lawyer) to have joined them as well.

**Background**

On a motion for summary judgment, the Court construes all facts favorably to the nonmoving party and makes reasonable inferences in that party's favor. *Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 552 (7th Cir. 2011). The Court takes the following facts from the parties' memoranda of law and statements of uncontested facts.

Around 10 p.m. on August 12, 2005, Chagolla and Salvador Mancia walked from a tavern to Mancia's residence at 2032 North Keeler Avenue in Chicago. Chagolla sometimes stayed at Mancia's apartment, but he had not been there for several days. As Mancia was unlocking the door, Chagolla heard cars pulling up and someone saying, "Freeze, put your hands up." Chagolla then turned around and saw Finnigan, Herrera, Markiewicz, Hopkins, and Parker, who were all wearing their police uniforms. One of the officers told Chagolla to walk backwards down the porch steps. After he did so, an officer grabbed him, patted him down, handcuffed him, and placed him in the back seat of a squad car. Another officer placed Mancia in the same car.

From the car, Chagolla watched Finnigan, Herrera, and Markiewicz enter the house using Mancia's keys. Parker and Hopkins then entered the car, and Parker drove it to an alley behind the house. Mancia was then removed from the car. Chagolla testified that he then saw Finnigan, Herrera, Markiewicz, and Zogg walk from the direction of the house carrying black garbage bags, which turned out to contain a large quantity of cocaine and marijuana. Chagolla also alleges that the officers took money and some of his clothing from the house.

After the officers placed the garbage bags in the trunk of one of the cars, Parker and Hopkins drove Chagolla through various nearby streets and alleys. The air

2

conditioning in the car was running during this time. Eventually, Parker and Hopkins pulled into a vacant lot, followed by the other officers in their squad cars. Parker and Hopkins exited the car, leaving the window slightly cracked. The officers formed a "huddle" to speak to each other, which they did for fifteen to twenty minutes, leaving Chagolla alone in the back seat. Chagolla felt extremely hot and anxious during this time. He testified that he "was almost asphyxiated" while sitting in the car. Chagolla Dep. at 291:2-22. He does not allege that the officers hit him or physically threatened him, that he sustained any physical injuries, or that he sought medical attention based on the officers' actions during his arrest. The temperature that evening ranged from seventy-eight degrees Fahrenheit at 9 p.m. to seventy-five degrees Fahrenheit at midnight.

After leaving the huddle, Parker and Hopkins returned to the squad car and drove Chagolla to a police station. Chagolla was eventually indicted for possession of a controlled substance with intent to deliver. He was detained for approximately eight months before posting bail in March 2006. On September 14, 2006, county prosecutors made a *nolle prosequi* motion in his case, and the case was dismissed.

Finnigan, Herrera, Hopkins, and Markiewicz were later charged criminally for various offenses in connection with their police work, including armed violence, residential burglary, theft, and acts similar to those alleged by Chagolla. The incidents surrounding Chagolla's arrest provided one of the bases for these charges. All four officers eventually pled guilty to some or all of the charges against them.

## Discussion

Summary judgment is appropriate where the record shows that there is no

3

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, a court construes all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The nonmoving party must offer something more than a 'scintilla' of evidence to overcome summary judgment . . . and must do more than 'simply show that there is some metaphysical doubt as to the material facts.'" *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Chagolla has sued the individual defendants under 42 U.S.C. § 1983 for excessive force, unreasonable search and seizure, false arrest and detention, failure to intervene, and deprivation of due process. He has also asserted state-law claims against the officers for malicious prosecution, intentional infliction of emotional distress, and conversion.

Chagolla has also sued the City of Chicago on a theory of *respondeat superior* on Chagolla's state-law claims, for indemnification under 745 ILCS 10/9-102, and under section 1983 based on his allegations that the City had a pattern or practice of condoning this type of police behavior and that it was aware of similar misbehavior by the defendants and others in their unit but did nothing to correct it. The Court has stayed the section 1983 claim against the city. As the Court will explain below, it grants summary judgment in favor of the individual defendants on some but not all of Chagolla's claims. Therefore, to the extent that the city has moved for summary

4

judgment on the issues of statutory indemnification and *respondeat superior* for the claims and/or defendants that no longer will be a part of this lawsuit, the Court grants the city's motion. To the extent that "the City requests that summary judgment be entered in its favor on all claims against it in plaintiff's complaint," City of Chicago Mem. at 3, the Court denies the motion.

## 1.    Excessive force

Chagolla claims that leaving him in the back seat of the squad car while huddling for fifteen or twenty minutes was the officers' way of "roasting" or "sweating" him and amounted to excessive force. Pl.'s Resp. at 2. He contends that the officers who left him in the car or knew that he remained there were "mentally torturing [him] in order to get him to confess or produce other goods." *Id*. Defendants respond that the action of leaving a suspect in the back seat of a hot car for this length of time cannot constitute excessive force. Some of the individual defendants also argue that even if this action did violate Chagolla's rights, they are not liable because they were not personally involved in placing Chagolla in the car.

Chagolla argues that "the defendants . . . surely knew anything they were doing with Chagolla after he was stopped without probable case and while they continued their criminal acts was illegal." *Id*. at 4. To the extent that this represents a contention that "any amount of force used to an effect an arrest without probable cause is *per se* excessive," it is incorrect. *Carlson v. Bukovic*, 621 F.3d 610, 622 n.19 (7th Cir. 2010) (quoting *McKenna v. City of Philadelphia*, 582 F.3d 447, 460 (3d Cir. 1999) (internal quotation marks omitted)). Instead, the Court must consider whether the alleged force was itself unreasonable under the Fourth Amendment. *Abdullahi v. City of Madison*,

5

423 F.3d 763, 768 (7th Cir. 2005) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "[T]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397.

Courts have recognized that detaining a suspect in a police car in extreme heat can constitute excessive force. In *Burchett v. Kiefer*, 310 F.3d 937, 944-45 (6th Cir. 2002), the Sixth Circuit reversed a grant of summary judgment in favor of officers who left a handcuffed suspect in an unventilated police car for three hours in ninety degree heat. A number of courts, however, have found that detention in a hot car for periods of twenty, thirty, or even forty-five minutes – much longer than the fifteen to twenty minutes in Chagolla's case – does not violate the Constitution. *See Emmerick v. City of Gatlinburg*, No. 08 C 305, 2010 WL 3861047, at *3-4 (E.D. Tenn. Sept. 24, 2010) (collecting cases).

Although the officers concede that Chagolla experienced discomfort in the car and claims to have felt as if he was being suffocated, they argue correctly that the Court must analyze the objective reasonableness of their actions, rather than Chagolla's subjective experience. The Court concludes that no reasonable jury could find that the officers responsible for leaving Chagolla in the car acted unreasonably in doing so. In addition to the relatively brief length of Chagolla's detention in the police car, a window in the car was at least slightly cracked, meaning that the car was not entirely unventilated, and the air conditioning had been on before the officers got out. Although

6

the temperature was in the high 70s, Chagolla was not exposed to direct heat from the sun, because it was after 10 p.m.  Moreover, Chagolla does not contend that the officers physically injured him, and he acknowledges that he began to recover from any mental anguish or anxiety by the time he arrived at the police station.

For these reasons, the Court grants summary judgment on count one in favor of all defendants.

## 2.        Unreasonable search and seizure

Chagolla alleges in his complaint that defendants "did not have probable cause, consent or other legal basis to search the apartment at 2032 North Keeler Avenue or to seize property found inside the residence."  Second Am. Compl. ¶ 27.  Defendants argue in their briefs, among other things, that Chagolla had no standing to protest the search of Mancia's apartment.

Although Chagolla refers in his response to "the illegal search of his residence" and "the money they illegally seized," these phrases are no more than passing references, and they are found in sections of Chagolla's brief that pertain to other claims.  Chagolla offers no legal argument whatsoever regarding count two.  The Court therefore concludes that Chagolla has forfeited any potential arguments on this claim and grants summary judgment on count two in favor of all defendants.

## 3.        False arrest

Chagolla claims that the individual defendants violated his Fourth Amendment rights by arresting and detaining him without probable cause.  None of the defendants claims that there was probable cause for Chagolla's arrest.  Markiewicz, Zogg, and Morales, however, have moved for summary judgment on this claim as against them,

each contending that he was either not present for or not involved with Chagolla's arrest.

An individual can be liable in a section 1983 action only if he or she "caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). Zogg argues that he cannot be liable for Chagolla's arrest because Chagolla testified at his deposition that he did not see Zogg while being arrested. Zogg cites *Jenkins v. Keating*, 147 F.3d 577 (7th Cir. 1998), for the proposition that he therefore could not have had "personal involvement in the alleged constitutional deprivation." Individual Defs.' Mem. at 17. In *Jenkins*, the Seventh Circuit upheld a grant of summary judgment on a false arrest claim against an officer who "merely performed a ministerial act in signing the criminal complaint . . . *after* [*another officer*] *placed* [*plaintiff*] *under arrest*." *Jenkins*, 147 F.3d at 583 (emphasis in original). *Jenkins*, however, does not stand for the proposition that an officer must personally place the handcuffs on an arrestee to be subject to a claim for false arrest. The Seventh Circuit allowed for the possibility of holding multiple officers liable, noting that a non-arresting officer "would have had to have undertaken some action prior to, or perhaps at the time of, [the arresting officer's] order to arrest . . . in order to have 'caused' or 'participated' in it." *Jenkins*, 147 F.3d at 583-84 (citing *Wolf-Lillie*, 699 F.2d at 869).

Chagolla concedes that he has "only identified Zogg as being present on two occasions during the relevant events on August 12, 2005: first, as one of the officers coming down the alley from 2032 N. Keeler Ave. with a black garbage bag, and second, as one of the officers in the huddle." Pl.'s Resp. to Ind. Defs.' L.R. 56.1 Stmt. ¶ 44. A

8

reasonable jury could infer, however, that Zogg, one of the officers who exited Mancia's residence and huddled in the vacant lot, had been a part of that group throughout the earlier events at 2032 North Keeler. A jury likewise could reasonably infer that Chagolla's failure to see Zogg when he initially turned around on Mancia's porch was a function of the brief duration of Chagolla's view of the group – after turning around, he was told to turn back around and back down the steps. A reasonable jury could therefore find that Zogg played the same role as the remaining officers in "causing or participating in" Chagolla's arrest. *See Wolf-Lillie*, 699 F.2d at 869.

Markiewicz argues that Chagolla has "failed to establish that Defendant Markiewicz participated in the arrest of Plaintiff, or at any time restrained him" because Chagolla conceded at his deposition that "it was Officer Finnigan who patted him down, handcuffed, and placed him in the squad car" and that other officers drove him to the station. Markiewicz Mem. at 4; Pl.'s Resp. to Markiewicz's L.R. 56.1. Stmt. ¶ 9. As the Court has explained, however, an officer does not need to have personally placed the handcuffs on an arrestee to be liable for participating in a false arrest, and Markiewicz has not argued that he was not present for Chagolla's arrest or uninvolved with the decision to detain or restrain him. Perhaps more importantly, Chagolla has submitted a transcript of Markiewicz's guilty plea hearing, during which Markiewicz testified that he was the one who apprehended Chagolla and placed him in handcuffs. Pl. Ex. A at 6, 10. Even if it were Chagolla's burden to show that Markiewicz had personally "restrained him," this testimony would constitute evidence from which a reasonable jury could find that Markiewicz had done so, precluding summary judgment.

Morales argues that he is entitled to summary judgment because Chagolla has

9

conceded that his belief that Morales was involved is "based entirely upon seeing Morales' name in a police report." Pl.'s Resp. to Ind. Defs.' L.R. 56.1 Stmt. ¶ 45. Chagolla also admitted that he "did not see anyone who he believes to be Morales at any other time on August 12, 2005, and is not sure whether he was ever at 2032 N. Keeler Ave." *Id.* And, despite Chagolla's explanation regarding the police report, he concedes that the report of the incident does not actually mention Morales. *Id.* ¶ 47. Chagolla offers no other evidence that Morales was present for the arrest itself or was a part of the group of officers at any other time that evening. Thus there is no evidence from which a reasonable jury could find that Morales caused or participated in Chagolla's arrest.

For these reasons, the Court grants summary judgment on count three in favor of Morales but declines to enter summary judgment in favor of Markiewicz and Zogg.

## 4. Due process

Although Chagolla does not indicate in his complaint which aspects of defendants' conduct he contends violated his due process rights, in his brief he "asserts that the defendants committed a *Brady* violation because they failed to disclose to him, his attorneys or prosecutors that they were involved in a criminal conspiracy before and at the time of his arrest." Pl.'s Resp. at 6 (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). The individual defendants argue that there was no violation of *Brady* because that case identifies rights that apply in connection with a trial on criminal charges, but not "when the individual is merely charged with a crime, but never fully prosecuted." *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011).

Chagolla attempts to distinguish his case from *Ray* by arguing that unlike the

10

defendant in that case, whose charges were *nolle prossed* after his initial hearing,
Chagolla's case was "up numerous times while he was held in jail for eight months."
Pl.'s Resp. at 6. As illustrated in *Ray*, however, the Seventh Circuit has consistently
considered the right to exculpatory and impeachment evidence protected by *Brady* to
focus on the criminal trial. Chagolla has not identified no Seventh Circuit case, nor is
the Court aware of one, that permits a civil claim based on a *Brady* violation by
someone who was "never fully prosecuted," *Ray*, 629 F.3d at 664, that is, who did not
actually go to trial. The Seventh Circuit has stated that a defendant who is acquitted
"may still have . . . a *Brady*-type due process claim [if] prompt disclosure of the
suppressed evidence would have altered the prosecution's decision to proceed to trial."
*Parish v. City of Chicago*, 594 F.3d 551, 554 (7th Cir. 2009). But in Chagolla's case, the
prosecution dismissed the case before trial. No Seventh Circuit case of which the Court
is aware allows a civil *Brady* claim in this context.

For these reasons, the Court grants summary judgment in favor of all defendants
on count five.

**5.      Failure to intervene**

Chagolla argues that defendants should be held liable for their failure to
intervene to stop the violations of his rights that occurred when he was stopped and
arrested, when Mancia's residence was searched, when Chagolla was held in the back
of the car, and when the false police report was filed. As the Court has explained, the
only alleged constitutional violation for which a reasonable jury could find defendants
liable is false arrest. Therefore, a jury could find for Chagolla on his failure to intervene
claim only to the extent that it involves the alleged false arrest.

11

"An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know . . . that a citizen has been unjustifiably arrested . . . and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). A "realistic opportunity to intervene" may exist "whenever an officer could have 'called for a backup, called for help, or at least cautioned [the defendant] to stop.'" *Abdullahi*, 423 F.3d at 774 (quoting *Yang*, 37 F.3d at 285). "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997).

Markiewicz, Zogg, and Morales have asserted essentially the same arguments for summary judgment on this claim as they did regarding Chagolla's false arrest claim. As the Court explained above, a reasonable jury could find that Markiewicz and Zogg "caused or participated in" Chagolla's arrest, which defendants have admitted was without probable cause. *See Wolf-Lillie*, 699 F.2d at 869. Such a jury could therefore similarly conclude that Markiewicz and Zogg, at the very least, could have "cautioned" the officer effecting the allegedly false arrest "to stop." *See Abdullahi*, 423 F.3d at 774. Because, however, there is no evidence from which a reasonable jury could find that Morales was present for or otherwise involved with Chagolla's arrest, no reasonable jury could find that Morales had the opportunity to prevent or warn against it.

For these reasons, the Court grants summary judgment in favor of Morales on

12

count four but declines to enter summary judgment in favor of Markiewicz and Zogg.

## 6.    Malicious prosecution

Chagolla alleges in his complaint that he "was subjected to judicial proceedings without probable cause" and that defendants "instituted and continued the proceedings falsely and maliciously."  Second Am. Compl. ¶¶ 57-58.  In order to recover for malicious prosecution, Chagolla must show "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liautaud*, 169 Ill. 2d 504, 512, 662 N.E.2d 1238, 1242 (1996) (internal quotation marks and citation omitted).

Defendants argue that Chagolla cannot prevail on the second part of this test because "dismissal by way of a *nolle prosequi* does not count as 'favorable' to the accused if 'the abandonment is for reasons not indicative of the innocence of the accused.'"  *Deng v. Sears, Roebuck and Co.*, 552 F.3d 574, 576 (7th Cir. 2009) (quoting *Swick*, 169 Ill.2d at 513, 662 N.E.2d at 1243).  They contend that there is "no evidence in the record to even suggest that the prosecutors believed that [Chagolla] was innocent of the charges against him."  Ind. Defs.' Mem. at 22-23.

The Illinois Supreme Court has specified that a *nolle prosequi* is not "indicative of the innocence of the accused" when it is "the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial."

13

*Swick*, 169 Ill. 2d at 513, 662 N.E.2d at 1243. The plaintiff has the burden of proof, and

he must show that "[t]he circumstances surrounding the abandonment [of the charge]

compel an inference that there existed a lack of reasonable grounds to pursue the

criminal prosecution." *Id*. at 513-14, 662 N.E.2d at 1243. In *Swick*, neither the *nolle*

*prosequi* order itself nor a prosecutor's testimony regarding it established the reason

why the order was entered. The court concluded that Swick had not established that

the proceedings were terminated in a manner consistent with his innocence.

The Court recognizes that Chagolla retains the burden of demonstrating why the

*nolle prosequi* order was entered, that "[a] bare nolle prosse without more is not

indicative of innocence," *Washington v. Summerville*, 127 F.3d 552, 558 (7th Cir. 1997),

and that no specific evidence of the reasons for the order is currently in the record.

Nonetheless, a genuine factual dispute remains regarding whether the circumstances

"compel an inference that there existed a lack of reasonable grounds" to pursue the

charges against Chagolla. *Swick*, 169 Ill. 2d at 513-14, 662 N.E.2d at 1243.

Markiewicz testified at his guilty plea colloquy that he "found no contraband on

Chagolla's person" and that the group of officers "agreed to write false police reports"

regarding the recovery of items from inside the residence and the reasons for

Chagolla's and Marcia's arrests. Pl. Ex. A at 6, 8, 10. Hopkins testified similarly. Pl.

Ex. B at 14-16.

Although defendants argue that their respective pleas are not admissible as

against each other, this testimony nonetheless indicates that the bases for the charges

against Chagolla, which included three counts of possession of a controlled substance

and one count of unlawful use of a weapon, were false in significant part. This is

14

underscored by the fact that the police report states – falsely, it appears – that when Chagolla was arrested, he was holding a bag containing a "white powdered substance" and carrying a gun.  Pl. Ex. E at 2.  The evidence could support a reasonable inference that prosecutors *nolle prossed* the case because they believed or concluded, or at least that evidence showed, that the allegations on which the charges were based were false. The Court therefore declines to grant summary judgment on this basis.

Markiewicz also argues that defendants are entitled to summary judgment because Chagolla cannot make the required showing on two additional parts of the *Swick* test:  the absence of probable cause and the presence of malice.  These arguments are unavailing.  As explained in the previous paragraph, a reasonable jury could find that defendants initiated charges against Chagolla based on the purported facts set forth in the arrest report, which several of them later admitted were false.

Markiewicz argues that Chagolla admitted in his deposition to having possessed a controlled substance with intent to distribute and that he was therefore guilty of that charge.  Even if true, however, this would not by itself entitle defendants to summary judgment.  "It is the state of mind of the one commencing the prosecution, and not the actual facts of the case or guilt or innocence of the accused, which is at issue" in the malicious prosecution / probable cause inquiry.  *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 348, 733 N.E.2d 835, 842 (2000).  A reasonable jury could find that defendants lacked probable cause to believe that Chagolla was guilty of the crimes with which he was charged at the time they initiated his prosecution.

Markiewicz's argument regarding malice also fails.  "[A] plaintiff may demonstrate malice by showing that the [defendant] proceeded with the prosecution for the purpose

15

of injuring plaintiff or for some other improper motive." *Aguirre v. City of Chicago*, 382
Ill. App. 3d 89, 97, 887 N.E.2d 656, 665 (2008).  "Although a lack of probable cause
does not itself establish malice, the trier of fact may infer malice from lack of probable
cause if there is no credible evidence which refutes that inference." *Fabiano v. City of
Palos Hills*, 336 Ill. App. 3d 635, 648, 748 N.E.2d 258, 270 (2002).  For the reasons the
Court has explained, a reasonable jury could find that defendants lacked probable
cause for the statements they made in aid of Chagolla's prosecution.  Defendants have
not argued that there is credible evidence refuting that inference other than Chagolla's
supposed guilt, which, given the circumstances of Chagolla's arrest, would not
necessarily persuade a jury that their motives were other than malicious.  A reasonable
jury could therefore find that defendants acted with malice by, for example, falsifying
charges against Chagolla to cover up their own criminal activity.

For the reasons stated above and in part three of this opinion, the Court grants
summary judgment on count seven in favor of Morales but denies it with respect to the
remaining defendants.

**7.    Intentional infliction of emotional distress**

Chagolla alleges in count eight of his complaint that the "conduct of individual
defendants in using excessive force, falsely arresting, terrorizing and causing plaintiff to
be imprisoned and prosecuted was . . . outrageous and caused plaintiff to suffer great
pain and/or emotional distress."  Second Am. Compl. ¶ 61.  Defendants argue that the
claim is time-barred and that Chagolla has not provided evidence that he actually
suffered severe emotional distress.

Chagolla was arrested on August 15, 2005.  More than two years later, on

16

August 16, 2007, he filed his complaint in this action. Defendants argue that count eight is barred by the one-year statute of limitations in Illinois' Local Governmental and Governmental Employees Tort Immunity Act. That provision states: "No civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101(a).

Defendants contend that Chagolla's cause of action accrued on the date of his arrest. This is incorrect. "Under Illinois law, a cause of action begins to accrue when facts exist that authorize the bringing of the action." *Cortes-Devito v. Vill. of Stone Park*, 390 F. Supp. 2d 706, 714 (N.D. Ill. 2005) (internal quotation marks and citation omitted). Although Chagolla's claim is based in part on events that took place on the day he was arrested, his "IIED claim is based not just on the events occurring on the day of his arrest, but on defendants' participation in his wrongful prosecution." *See Pierce v. Pawelski*, No. 98 C 3337, 2000 WL 1847778, at *3 (N.D. Ill. Dec. 14, 2000). In addition, "courts in this district have consistently held that IIED claims based on facts alleged in parallel claims for malicious prosecution accrue only when state criminal proceedings are terminated." *Carroccia v. Anderson*, 249 F. Supp. 2d 1016, 1028 (N.D. Ill. 2003); *see also Walden v. City of Chicago*, 755 F. Supp. 2d 942, 961-62 (N.D. Ill. 2010). The charges against Chagolla were dismissed on September 14, 2006. The Court is unpersuaded that Chagolla's IIED claim accrued more than one year before he filed his complaint.

To prevail on an IIED claim, a plaintiff must show that the conduct involved was "truly extreme and outrageous"; the actor intended his or her conduct to inflict such

17

distress or knew "that there is at least a high probability" of it; and the conduct "in fact cause[d] severe emotional distress." *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 746 (7th Cir. 2008). Defendants do not dispute, for purposes of this motion, that their conduct was extreme and outrageous. *See Fox v. Tomczak*, No. 04 C 7309, 2006 WL 1157466, at *6 (N.D. Ill. Apr. 26, 2006) ("Allegations that a state official fabricated false or misleading evidence of guilt . . . would be sufficiently 'outrageous' to support an IIED claim."). They argue, however, that Chagolla has failed to show that he in fact suffered extreme distress, regardless of how outrageous their conduct might have been.

Illinois law does not draw a hard-and-fast line between the first and third parts of the IIED test. "[I]n many cases the extreme and outrageous character of the defendant's conduct is itself important evidence that the distress has existed." *Fox v. Hayes*, 600 F.3d 819, 842-43 (7th Cir. 2010) (internal quotation marks and citations omitted). Chagolla testified that his "emotional distress was going to jail." Chagolla Dep. at 259:10-11. When asked if he had any "emotional distress . . . sustained as a result of the August 12th arrest," he said,

> Just the stress that I felt that night and every single night that I slept in jail and every single night that I slept on the floor for four months almost. . . . I slept for four months, got beat up, got sent to the hospital, got tooken [sic] x-rays of my face. Other than that stress, no.

*Id*. at 187:18-188:1. The Court concludes that a reasonable jury could find that Chagolla suffered extreme emotional distress as a result of defendants' conduct.

For the reasons stated above and in part three of this opinion, the Court grants summary judgment on count eight in favor of Morales but denies it with respect to the remaining defendants.

8.     **Conversion**

Defendants argue that Chagolla's claim for conversion is time-barred under the Local Governmental and Governmental Employees Tort Immunity Act. Unlike Chagolla's claim for IIED, this claim accrued on the date of his arrest, when defendants allegedly took his clothes from Mancia's residence. Chagolla further alleges that he became aware of defendants' theft of his clothing when he got out of jail in March 2006. Pl.'s Resp. to Ind. Defs.' L.R. 56.1 Stmt. ¶ 54. Thus, even if this claim was tolled until Chagolla discovered defendants' alleged wrongdoing, more than a year passed between that discovery and the filing of this case in August 2007. The Court therefore concludes that this claim is time-barred and grants summary judgment in favor of all defendants.

**Conclusion**

For the reasons stated above, the Court grants defendants' motions for summary judgment in part and denies them in part [docket nos. 185, 189, 190, 193, 194]. Summary judgment is granted in favor of defendant William Morales on all claims against him and in favor of all individual defendants on counts one, two, five, and nine of the second amended complaint. The Court otherwise denies the motions. The case is set for a status hearing on February 16, 2012 at 9:30 a.m. Counsel should be prepared at that time to discuss the status of the *Monell* claims and set a trial date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  February 8, 2012